**IN THE UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSEE DIVISION**

FLORIDA WILDLIFE FEDERATION,
INC., et al.,

Plaintiffs,

v. CASE NO. 4:12cv355-RH/CAS

UNITED STATES ARMY CORPS OF
ENGINEERS, et al.,

Defendants.
_________________________________/

**DISTRICT'S MOTION TO ADDRESS THRESHOLD DEFENSES**
**IN THE PROPER SEQUENCE AND TO DISMISS**

The South Florida Water Management District (District) requests the court to reconsider the sequence by which it has indicated it intends to address the defendants' motions to dismiss. As the discussion below attests, sequencing matters. By dismissing the District's appeal as moot rather than remanding for entry of indicative rulings, this issue was preserved for resolution on remand.

Two grounds for dismissal are at play: (1) the District's claim to be an indispensable party;[1] and (2) the U.S. Army Corps of Engineers' (Corps) claims to be immune from state law. This court's indicative rulings reach the merits of both. But, do not explain why the court believes it is proper, much less necessary, to reach the Corps' immunity after acknowledging this case should not proceed in the District's absence. We explain below that the indispensable party claim should be decided first and, once decided, the Corps' motion to dismiss is moot.

[1] While Fed. R. Civ. P. 19(b) has dropped the term "indispensable," it remains useful shorthand to describe those parties whose absence precludes the court from justly proceeding.

I. **Background**

**A. Federalism and comity.**

Both defendants' motions to dismiss implicate several federalism and comity principles. Most critically, the Eleventh Amendment bars this court from adjudicating the District's sovereign rights and interests through this case. The Corps' immunity claim seeks just that, for this court to delineate the intersection of state and federal interests in the activity being challenged and, thereby, the defendants' respective authorities. The District has appeared for the limited purpose of preventing that from happening. D.E. 39 (Motion to Intervene).

**B. Defendants' distinct sovereign interests.**

The Corps and the District have palpable yet discrete interests in the facilities challenged in this case. They are part of a massive public works known as the Central and Southern Florida Project for Flood Control and Other Purposes (C&SF). D.E. 28 at 7 n.2 (State parties motion to dismiss). Two of the C&SF's several purposes are central to this motion: (1) the Corps' maintenance of navigation, and (2) the State's allocation of water supplies.

On one hand, it is well established in our federalist system that the Commerce Clause of the United States Constitution confers upon the federal government supreme authority over navigation. *See United States v. Rands*, 389 U.S.121, 122 (1967). The Corps is largely responsible for maintaining and protecting navigation. On the other hand, it is equally well founded that the Tenth Amendment reserved to each State traditional authority to allocate water within its jurisdiction. *See* 33 U.S.C. § 1251(g); *California v.United States*, 438 U.S. 645 (1978); D.E. 28 Ex. A at 14. The District is largely responsible for allocating the water supplies at issue in this case. D.E. 28 at 6–7.

These constitutionally delineated federal-state roles have been codified and carefully balanced in the C&SF's operational protocols known as the Lake Okeechobee Regulation Schedule (LORS), which govern the operations plaintiffs seek to enjoin. D.E. 28 Ex. A. Through LORS, the Corps maintains navigation within parts of the C&SF while cooperatively implementing the District's allocation policies. *Id*. "The Corps' balancing-of- purposes is all the more difficult" in dry times of water scarcity that are relevant to this suit. D.E. 18 at 9 (Corps' motion to dismiss for lack of jurisdiction). Under those conditions, the "Corps generally defers to the . . . water allocation decisions of the [District]" unless they would "interfere with navigation." *Id*.

LORS specifically incorporates the District's water shortage rules to provide operational triggers and a framework to preserve the District's allocative decisions. D.E. 28 at 8. Thus, the Corps acknowledges that, even under LORS, "responsibilities [for allocating water] rest with the State" and that "impacts to navigation" are only a "potential overriding factor when working with the State to devise an operational strategy." *Id*. At bottom, the Corps, through its regulation schedules, does not allocate water supply among various water users; water supply allocation decisions are made by the District. *Lake Worth Drainage Dist. v. Caldera*, Case No. 96-8827-CIV-GOLD, Order Granting Summary Judgment (S.D. Fla. 2006). It follows that many of the operational decisions made by the Corps and the District under LORS lack navigational implications and, therefore, are left to the District.

Plaintiffs' aim is for the court to mandate releases to the Caloosahatchee River during times of drought that would otherwise be limited by the state's water shortage rules and, thus, LORS. At those dry times, the District has a heightened interest in regulating the allocation of water through these structures given the increased competition among environmental needs and

consumptive uses, including public utilities, Indian tribes and agriculture. D.E. 28 at 8–9. The District's water shortage rules kick in to restrict consumptive uses and limit or even prohibit discharges from the Lake. *Id*. As noted, LORS incorporates those rules and calls for the Corps to defer to the District except as necessary for navigation.

### C. The Corps' overly-broad invocation of sovereign immunity.

The Corps moved to dismiss based upon sovereign immunity. D.E. 18. It acknowledged the Clean Water Act "generally subjects federal facilities to the requirements of state law . . . and thus waives sovereign immunity to some degree." *Id*. at 3. But, claims that Congress further limited that waiver to state laws that do not affect or impair the Corps' authority to maintain navigation. 33 U.S.C. § 1371(a).

The Corps' motion poses a broad, detailed factual challenge as opposed to a facial challenge to the Complaint. D.E. 18 at 11. Extensive affidavits were filed and voluminous authorizing documents cited. D.E. 19–21 & 31. The Corps made no attempt to tailor its immunity claim to the particular relief sought in this case. But rather, urged instead for the district court to declare all operations under LORS immune from state law even for actions that "might have no effect on navigation." D.E. 18 at 19. As the court's indicative ruling illustrates, the Corps is really seeking a declaration of unbridled immunity from state restrictions upon any "decisions under LORS." D.E. 61 at 9. If accepted, that declaration would reach decisions to disregard the District's allocative authorities regardless whether the Corps' navigational authorities would be affected in any way. The result would be to shift the balance of federal navigational and state allocative rights struck by LORS.

### D. The District's Eleventh Amendment and Rule 19(b) defenses.

The Corps' immunity claim raised concern, a concern borne out by the proposed indicative ruling, that this court would accept the Corps' extraordinary determination to immunize itself from not only this suit, but from the District's allocation authorities that LORS otherwise requires them to honor. But the District could no more defend its interests against the merits of that immunity claim than it could against the merits of plaintiffs' claims without waiving its Eleventh Amendment immunity. To preserve those constitutional rights, the State parties invoked a twofold defense: (1) the Eleventh Amendment prohibits the court from compelling the District's participation; and (2), Federal Rule of Civil Procedure 19(b) prohibits the court from proceeding in the District's absence on the merits of issues that threaten to prejudice its sovereign interests. D.E. 28.

## II. ARGUMENT

The court's indicative orders do not explain the reason for considering the Corps' immunity first among the alternative threshold issues presented. Admittedly, general sequencing practices anticipate disputes over Article III jurisdiction will be resolved before the merits of a case and sometime before other threshold issues. *See Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83 (1998); *Calderon v. Ashmus*, 533 U.S. 740 (1998) (Article III case in controversy decided before Eleventh Amendment). But, the plurality opinion in *Steel Co.* also acknowledged the practice has been "diluted" by a number of cases. 523 U.S. at 101.

Today, that general practice is riddled with growing exceptions. *See, e.g., Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574 (1999) (personal jurisdiction decided before subject matter jurisdiction); *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422 (2007) (Forum non conveniens decided before jurisdiction). The Supreme Court has clarified that, "[w]hile Steel

Co. reasoned that subject-matter jurisdiction necessarily precedes a ruling on the merits, the same principle does not dictate a sequencing of jurisdictional issues." *Ruhrgas*, 526 U.S. at 584. The Court confirmed in *Ruhrgas* that it is hardly novel for a federal court to choose among threshold grounds for denying an audience to a case on the merits. *Id*. at

585. When faced with a choice between threshold issues, each likely to end the action, the court should address them in the sequence that best honors and balances the policies underpinning them and judicial economy.

Indeed, the Court in *Ruhrgas* emphasized "[c]ooperation and comity, not competition and conflict, as essential to the federal design" in holding that "a State's dignitary interests bears consideration" when determining the sequence by which threshold defenses should be addressed. *Id*. at 586. In this case, giving full effect to the District's sovereignty defenses, under both the Eleventh Amendment and Rule 19(b), is necessary to protect comity interests that call for the "respect and dignity due sovereign entities" and underpin the Eleventh Amendment. *See generally, Fed. Maritime Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743, 769 (2002) (explaining the Eleventh Amendment's import in preserving constitutional federalism).

Federal Rule of Civil Procedure 19(b) provides an even broader equitable sequencing argument. This court's indicative order acknowledges that the State parties' "Eleventh Amendment defense was well founded." D.E. 61 at 3. It further accepts that the "District argues with considerable force that it is indeed an indispensable party" emphasizing that the "Corps often defers to the District in its operations." D.E. 61 at 3 & 14. Under 19(b), where a sovereign party claims an interest that could potentially be impacted by an adjudication of a lawsuit in which the sovereign is immune, that suit cannot in equity or good conscience proceed and must be dismissed. *See, e.g., Republic of Philippines v. Pimentel*, 553 U.S. 851, 867 (2008). Once non-

frivolous sovereign interests are claimed, comity prevents the courts from addressing the merits of issues that may prejudice them. *Id*. at 864. When the interests are traditional sovereign functions, like the District's authority over the State's water resources—as opposed to the mere monetary concerns implicated in *Pimentel*—principles of federalism and respect for the dignity of the state are heightened and warrant even greater consideration and comity.

Courts have also considered the relative complexity and novelty of competing threshold issues in selecting which to address first. *Ruhrgas*, 526 U.S. at 588. In *Ruhrgas*, the Court chose to address the threshold issue it found more easily resolved and on surer ground. Such considerations of economy do not bode any better for the Corps' motion. The Corps advanced a factual not facial challenge that the court's indicative rulings demonstrate is much less readily resolvable than the District's defense. That became even more apparent once the plaintiffs conceded the District's Eleventh Amendment right to dismissal. Then, as the indicative order reflects, the court did not have to look past the plain language of the statutes to conclude the case should not proceed without the District as a party. D.E. 61 at 11.

As *Pimentel* informs, the Rule 19(b) analysis does not entail a merits inquiry, but rather just a facial review to determine only that the interest being claimed and threat of prejudice are not frivolous. 553 U.S. at 864. By contrast, the Corps' immunity required considerably greater record review. But how easily it could properly be resolved against the District is unknown since the District was prevented from participating without waiving its constitutional rights. Had the District participated, it is likely the record would have been materially more complex and certainly chalked with novel issues regarding the balance of state and federal water resource policies that were merely broached by the plaintiffs' unavailing opposition.

The rationale of this court's second proposed indicative ruling—declaring that the case cannot go forward in the District's absence—even further bolsters the District's sequencing arguments. As that indicative ruling openly acknowledges, the State legislature required the District to be joined to serve the "important substantive purpose" of helping ensure "any relief does not . . . adversely impact other interests within the [District's] jurisdiction." D.E. 61 at 13. That is exactly the District's concern with adjudicating the Corps' motion in the District's absence. The Corps is not seeking limited immunity from the specific relief sought in this case, but a broad determination that would shift the balance of state and federal rights as described above. The District's objection is because the breadth of the Corps' claimed immunity threatens to prejudice the District's authority.

Against the backdrop of these considerations, there does not appear to be any countervailing reason for the court to disregard the District's concerns and proceed over its objection with the Corps' motion. The Corps makes no claim that the District's defenses pose a reciprocal threat of prejudice to it. Because no injury or affront to the Corps will result from dismissing this case on the District's motion. The District does not seek adjudication of a federal interest. To the contrary, the District's aim is to prevent state authorities, the abatement statute underpinning this case, from being extended over the Corps. The District's success would end the proceeding without leaving anyone unduly prejudiced. Comparing ramifications of the various sequences by which these issues could be addressed, the Corps' motion is neither legally nor logically antecedent to the District's motion.

III. **CONCLUSION**

The District's limited participation in this case seeks to ensure its legal interests and the balance of state and federal authorities codified in LORS are not altered, impaired or impeded by

rulings of the court, whether on the merits of plaintiffs' claims or through declarations of the Corps' immunity. The indicative orders gloss over the sequencing question presented while giving no reason for going beyond a finding that the District is an indispensable party to, unnecessarily, reach the merits of the Corps immunity defense. Factors set forth by the Supreme Court all weigh in favor of the sequencing proposed by the District and support abstaining from adjudicating any other unnecessary issue, the Corps immunity included. In the end, equitable and federalism principles weigh heavily in favor of considering the District's dispositive defenses antecedent to the Corps' immunity defense.

Wherefore, the District respectfully requests dismissal on the grounds that this case should not proceed in the District's absence and all other motions should be denied as moot.

Respectfully submitted,

Carolyn S. Ansay
General Counsel

By: /s/ James E. Nutt

JAMES E. NUTT
Florida Bar No. 874868
South Florida Water Management District
3301 Gun Club Road MSC-1410
West Palm Beach, Florida 33406
(561) 682-6253
(561) 682-6276 Facsimile
jnutt@sfwmd.gov

Attorneys for Defendant, South Florida Water Management District

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on April 11, 2014, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using CM/ECF. Copies of the foregoing document will be served upon interested counsel either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not yet authorized to electronically receive Notices of Electronic Filing.

/s/ James E. Nutt
JAMES E. NUTT