IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

FLORIDA WILDLIFE FEDERATION, INC.
et al.,

      Plaintiffs,

v.                                      CASE NO. 4:12cv355-RH/CAS

UNITED STATES ARMY CORPS OF
ENGINEERS et al.,

      Defendants.

_____/

## ORDER OF DISMISSAL

In this case the plaintiff environmental organizations seek declaratory and injunctive relief against the United States Army Corps of Engineers. The plaintiffs claim that the Army Corps is violating water-quality standards adopted by the State of Florida. The Army Corps has moved to dismiss based on sovereign immunity. And the nonparty state agency charged with enforcing the water-quality standards in relevant respects—the South Florida Water Management District ("the District")—asserts that the case should be dismissed because the District has not

been, and cannot be, joined as a party. The District seeks to intervene for the limited purpose of making this assertion.

This order grants the District's motion for limited intervention and dismisses the case.

I

The Corps operates the three water-control structures at issue on the Caloosahatchee River. Each consists of a spillway and navigation lock. The river is part of the Okeechobee Waterway, a 154-mile channel that allows navigation across the Florida peninsula between the Atlantic Ocean and the Gulf of Mexico. The channel runs through Lake Okeechobee, the second largest freshwater lake in the continental United States.

The plaintiffs are environmental organizations who have standing to pursue the claim that the Corps is operating the water-control structures in a manner that violates water-quality standards adopted by the State of Florida.

In their complaint, the plaintiffs asserted a claim under Florida Statutes § 373.433, which allows a private citizen to sue the operator of a stormwater management system (or appurtenant work) for violating water-quality standards. The plaintiffs asserted, and still assert, no claim other than the one arising under § 373.433.

The plaintiffs originally named as defendants not only the Army Corps but also two state agencies: the District and the Florida Department of Environmental Protection. The plaintiffs sought no relief against the state agencies.

The Army Corps moved to dismiss based on sovereign immunity. The state agencies moved to dismiss based on Eleventh Amendment immunity. Perhaps recognizing that the Eleventh Amendment defense was well founded, *see, e.g.*, *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44 (1996), the plaintiffs voluntarily dismissed any claim against the state agencies, leaving the Army Corps as the sole defendant.

The District moved to intervene, asserting that even though it had insisted that it could not be joined, it now wished to be joined, though only for two purposes. First, the District sought to present legal arguments—the arguments that the case could not go forward without the District as a party and that the court was obligated to consider that issue first (even before subject-matter jurisdiction). Second, the District indicated it would appeal any order refusing to address the issues in the sequence the District demanded. An order was entered denying intervention on these terms. But the order allowed the District to participate as amicus, that is, to make the legal arguments the District wished to make. The order specifically preserved and did not rule on the issue of whether the case could go forward without the District as a party.

The District moved to reconsider the denial of intervention. Argument on the motion to reconsider was consolidated with argument on the Army Corps motion to dismiss. The issues were thoroughly addressed at an extended oral argument that ran nearly an hour and a half. The District was fully and fairly heard, including on the issue whether it was an indispensable party. No ruling was announced or intimated. The only thing that was clear from the argument was that the issues would be considered with great care.

Without awaiting a ruling, the District filed a notice of appeal from the earlier order that denied intervention but explicitly allowed the District to participate as amicus. I entered indicative rulings on the motion to dismiss and motion to reconsider, *see* Fed. R. Civ. P. 62.1; *see also* Fed. R. App. P. 12.1, essentially indicating my intention to enter this order upon dismissal of the appeal or remand for that purpose. The Eleventh Circuit dismissed the appeal for lack of jurisdiction.

II

The Clean Water Act requires federal agencies, including the Army Corps, to comply with federal, state, and local water-quality standards. And the Act subjects federal agencies, including the Army Corps, to state procedures for enforcing the standards. The Act provides:

> Each department, agency, or instrumentality of the executive, (1)
> legislative, and judicial branches of the Federal Government

> having jurisdiction over any property or facility, or (2) engaged in any activity resulting, or which may result, in the discharge or runoff of pollutants, and each officer, agent, or employee thereof in the performance of his official duties, shall be subject to, and comply with, all Federal, State, interstate, and local requirements, administrative authority, and process and sanctions respecting the control and abatement of water pollution in the same manner, and to the same extent as any nongovernmental entity including the payment of reasonable service charges. The preceding sentence shall apply (A) to any requirement whether substantive or procedural (including any recordkeeping or reporting requirement, any requirement respecting permits and any other requirement, whatsoever), (B) to the exercise of any Federal, State, or local administrative authority, and (C) to any process and sanction, whether enforced in Federal, State, or local courts or in any other manner. This subsection shall apply notwithstanding any immunity of such agencies, officers, agents, or employees under any law or rule of law.

33 U.S.C. § 1323(a).

The Act thus waives the federal government's sovereign immunity, including for the Army Corps. But the waiver is subject to a critical limitation. The waiver does not apply to acts undertaken by the Army Corps under its authority "to maintain navigation." This is so because a different section of the same chapter provides, "This chapter shall not be construed as . . . affecting or impairing the authority of the Secretary of the Army . . . to maintain navigation . . . ." *Id.* § 1371(a).

As an original matter, § 1371(a) could be construed as a limit on merits review of Corps actions—that is, as affecting only the merits of, not jurisdiction over, an action authorized by § 1323(a). But substantial authority holds that

§ 1371(a) provides an exception to the § 1323(a) waiver of sovereign immunity, not just a limit on the merits of a claim. *See In re Operation of the Mo. River Sys. Litig.*, 418 F.3d 915, 917-19 (8th Cir. 2005). The Army Corps characterizes § 1371(a) as an exception to sovereign immunity, and the plaintiffs accept the characterization; the plaintiffs challenge only the scope, not the nature, of the exception. I accept the parties' characterization of § 1371(a) as a limit on the waiver of sovereign immunity.

III

The State of Florida has adopted water-quality standards as required by the Clean Water Act. A Florida statute creates a private right of action against the operator of a stormwater management system (or appurtenant work) who violates the water-quality standards. The Caloosahatchee River water-control structures now at issue are part of a stormwater management system or appurtenant work within the meaning of the statute.

The statute provides:

> Any stormwater management system, dam, impoundment, reservoir, appurtenant work, or works which violates the laws of this state or which violates the standards of the governing board or the department shall be declared a public nuisance. The operation of such stormwater management system, dam, impoundment, reservoir, appurtenant work, or works may be enjoined by suit by the state or any of its agencies or by a private citizen. The governing board or the department shall be a necessary party to any such suit.

Fla. Stat. § 373.433 (2013).

IV

The Army Corps mounts a factual attack on subject-matter jurisdiction, not simply a facial challenge on the pleadings. Accordingly, the court must independently weigh the facts based on the record. *See Odyssey Marine Exploration, Inc. v. Unidentified Shipwrecked Vessel*, 657 F.3d 1159, 1169 (11th Cir. 2011). The burden is on the plaintiffs to demonstrate that the court has subject-matter jurisdiction. *See OSI, Inc. v. United States,* 285 F.3d 947, 951 (11th Cir. 2002) ("In the face of a factual challenge to subject matter jurisdiction, the burden is on the plaintiff to prove that jurisdiction exists."); *see also Thomson v. Gaskill*, 315 U.S. 442, 446 (1942); *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir.1980).

As it turns out, in this case the allocation of the burden would not affect the outcome.

V

The analysis begins with the plain language of the relevant federal and state statutes. First, Florida Statutes § 373.433 would allow a lawsuit exactly like this one against a nongovernmental entity operating water-control structures like those the Army Corps operates. Under 33 U.S.C. § 1323(a), the Army Corps is subject to such a lawsuit, to the same extent as a nongovernmental entity. But there is an exception. Under 33 U.S.C. § 1371(a), the Army Corps retains its sovereign

immunity from lawsuits challenging acts taken under the authority of the Army Corps "to maintain navigation."

The Okeechobee Waterway serves multiple purposes. High on the list are flood control and navigation. The Army Corps, acting in concert with the District, regulates the flow of water from Lake Okeechobee and through the water-control structures. Decisions are made based on protocols adopted in 2008 known as the "Lake Okeechobee Regulation Schedule" or "LORS." On matters not affecting navigation, the Army Corps defers in substantial respects to the District, whose responsibilities include allocating South Florida waters among various users.

The record establishes beyond dispute that protecting navigation was a factor in the adoption of LORS. The plaintiffs say, though, that other factors predominated, and that many individual decisions on the release of water through the structures have nothing to do with navigation. It is undeniable that other factors, not just navigation, played a substantial role in the development of LORS and in its implementation. Many individual decisions taken under LORS do not affect navigation.

The critical issue, then, is the level of generality at which the determination is made whether a lawsuit challenges action taken by the Corps under its authority "to maintain navigation." I conclude that the proper level of generality coincides with the governing protocol—LORS—because the Army Corps reasonably chose

to manage the structures from that level. It thus is sufficient to establish sovereign immunity that navigation was a factor in the adoption of LORS and that LORS is the starting point for each individual decision now challenged by the plaintiffs. The structures serve a navigational purpose, LORS has a navigational component, and in making decisions under LORS, the Army Corps is exercising its authority to maintain navigation.

This conclusion is wholly consistent with *Central Green Co. v. United States*, 531 U.S. 425 (2001). In that case, a canal that was part of a massive government project with multiple purposes, including flood control, ran through the plaintiff's pistachio orchard. The plaintiff sued the government under the Federal Tort Claims Act, asserting that the canal's negligent design, construction, and maintenance caused subsurface flooding that damaged the plaintiff's property. A statute gave the government immunity from claims for "damage from or by floods or floodwaters at any place." 33 U.S.C. § 702c. The district court granted judgment on the pleadings for the government, and the Ninth Circuit affirmed, on the ground that the canal was part of the massive project, that a purpose of the massive project was flood control, and that nothing more was required for immunity.

The Supreme Court reversed, holding that it was error to grant judgment on the pleadings. The Court remanded for further proceedings, saying that in

determining immunity, "courts should consider the character of the waters that cause the relevant damage rather than the relation between that damage and a flood control project." *Central Green*, 531 U.S. at 437.

*Central Green* involved a different statute, but its approach is instructive. It is not enough here, just as it was not enough in *Central Green*, that the entire Okeechobee Waterway project serves a navigational purpose. Instead, here, as there, the facts must be considered at a lower level of generality.

Beyond that, the difference in statutes limits the usefulness of *Central Green*. The immunity statute there addressed flood waters; the Court said it was critical whether the damage came from flood waters. The waters in *Central Green* could be divided into those that were and those that were not flood waters. But the waters at issue here cannot be divided into those that are and those that are not navigable; the waters are all navigable.

Moreover, changing the water level in one part of the project changes the level in others. And an effect on navigation is never far removed. High water in the lake puts pressure on structures whose integrity is important to maintaining navigation. Low water in the lake or other parts of the system can cause vessels to run aground; the record confirms that when water has been low, groundings have increased. The assertion of the Army Corps that navigation was a factor in

establishing LORS seems obvious and, in any event, is established by the only evidence on this issue in this record.

In sum, the Army Corps reasonably chose to begin the decision-making process for the actions now at issue through LORS. A factor in adopting LORS was the need to maintain navigation. The waiver of sovereign immunity set out in 33 U.S.C. § 1323(a) does not allow the plaintiffs' state-law claim to go forward, because 33 U.S.C. § 3371(a) excepts from the waiver any claim challenging acts taken by the Army Corps under its authority to maintain navigation. The plaintiffs assert such a claim.

## VI

There is another ground for dismissal as well. Even if the exception to the waiver of sovereign immunity did not apply, the federal statute that would allow this case to go forward, 33 U.S.C. § 1323(a), makes applicable not only the substantive components of state law, but also the procedural components. Thus the statute makes a federal agency, here the Army Corps, "subject to . . . State . . . requirements . . . and process." The statute says this means "any requirement whether substantive or procedural." And the statute subjects the federal agency to a lawsuit only "to the same extent as any nongovernmental entity."

The plaintiffs say, correctly, that § 1323(a) makes the Army Corps amenable to an action under Florida Statutes § 373.433, at least in the absence of sovereign

immunity. The plaintiffs assert in this lawsuit only a single claim—a claim arising under § 373.433. But § 373.433 includes a procedural requirement that, under 33 U.S.C. § 1323(a), is just as applicable as the substantive components of § 373.433. The procedural requirement is this: the state agency with authority to enforce the standards at issue—in this case the District or the Florida Department of Environmental Protection—"shall be a necessary party to any such suit." That is why the plaintiffs initially named as defendants in this action both the District and the Department of Environmental Protection, even though the plaintiffs asked for no relief against them.

Ordinarily, whether a party is one without whom a federal lawsuit cannot go forward is a question of federal law. *See* Fed. R. Civ. P. 19; *see also Hanna v. Plumer*, 380 U.S. 460 (1965). Here, though, a federal statute adopts state procedural requirements in relevant respects. The Florida legislature created the cause of action at issue but explicitly provided that such an action can go forward only with the affected regulator as a party. And Congress subjected the Army Corps to such an action only to the same extent as a nongovernmental entity. A nongovernmental entity cannot be sued under § 373.433 unless the appropriate regulator—in this case the District or Department of Environmental Protection—is a party.

This does not mean that an action in federal court asserting a claim under § 373.433 is governed by the Florida Rules of Civil Procedure or other state procedural requirements rather than the Federal Rules of Civil Procedure and other federal procedural law.  A federal lawsuit is a federal lawsuit, governed by federal procedures, with limited exceptions.  *Hanna* makes this clear.  But requiring the regulator to be joined in an action under § 373.433 serves an important substantive purpose; it helps ensure that relief is not granted beyond what state law actually requires and that any relief does not, without a proper basis, adversely impact other interests within the regulator's jurisdiction.  Federal Rule of Civil Procedure 19 remains applicable, but § 373.433 adds a specific additional requirement that applies to a claim against a federal agency, based on the specific reference in § 1323(a) to state procedural requirements.  Were it otherwise, the federal agency would be subject to a claim without a safeguard—the regulator's participation— uniformly available to a nongovernmental entity.

This makes it unnecessary to decide whether, in the absence of the incorporation of the state requirement, the District would be a party without whom the case could not go forward—what Federal Rule of Civil Procedure 19 formerly called an "indispensable party."  It bears noting, though, that the District consults with the Army Corps on most or all of the water-flow decisions at issue and that the Army Corps often defers to the District.  Moreover, any relief in this case

would affect the District's water-allocation responsibilities.  The District argues with considerable force that it is indeed an indispensible party, even without regard to the state statute explicitly addressing this issue.

Dismissing this case does not leave the plaintiffs without a remedy if, as they assert, the Army Corps is acting improperly.  As the Army Corps and the District have explicitly acknowledged, the Army Corps actions at issue, even though taken under the authority to maintain navigation, are subject to challenge under the Administrative Procedure Act.

## VII

After the Eleventh Circuit dismissed the District's appeal based in large part on my indicative rulings, the District filed another motion insisting that I should not reach the issue of subject-matter jurisdiction (as addressed in section V above) but should instead dismiss solely because the District is an indispensable party (as addressed in section VI above).  I disagree.  Even if a district court *may* address other issues without deciding whether it has subject-matter jurisdiction, the assertion that a district court *must* address other issues first is a hard sell.  The Army Corps has properly raised the issue of subject-matter jurisdiction.  I choose to address that issue first, and to address the indispensable-party issue only as an alternative basis for dismissal.

VIII

The Army Corps is immune from this lawsuit.  And even if that were not so, the case could not go forward in the absence of the appropriate state agency.  The case thus must be dismissed.  For these reasons,

IT IS ORDERED:

1.	The District's motions for limited intervention, ECF No. 39, and to reconsider, ECF No. 43, are GRANTED.

2.	The clerk must enter a judgment stating, "All claims are dismissed for lack of subject-matter jurisdiction based on sovereign immunity and for failure to join an indispensable party."

3.	The clerk must close the file.

SO ORDERED on May 26, 2014.

s/Robert L. Hinkle<br>United States District Judge